Ladies and gentlemen, please rise. The court is now in session. The court is now in session. Thank you. Are you ready to see Mr. Sheehan? Yes, sir. Very well. Good morning. May it please the court, counsel. My name is Terrence Sheehan, and I represent appellants Patricia Keevlan and Natasha Toler. You're here today on an action for administrative review in which appellants seek to vindicate their constitutional contractual rights. This lawsuit challenges the constitutionality of Public Act 96-889 as applied to both plaintiffs and their administrative proceedings. Plaintiffs raised four distinct arguments on appeal and were challenging the decisions of defendant judges retirement system, JRS, as well as the Board of Trustees' decisions with respect to both of these appellants. JRS determined that they would be Tier 2 participants rather than Tier 1 participants in JRS. The first issue for review is whether or not JRS's application of the Public Act, when it calculated Judge Keevlan's pension benefits and its decision to treat Judge Toler as a Tier 2 participant, violates their rights under the Illinois Constitution's pension protection clause. The second issue is whether or not JRS's application of the Public Act violates the equal protection clauses of both the Illinois and U.S. Constitutions and the special legislation clause of the Illinois Constitution. The third argument is an alternative argument. It is not a constitutional argument. And what we ask is to determine whether or not JRS's interpretation of the Public Act violates the legislative intent of that act. And finally, the fourth argument asks this court to determine if the Public Act is unconstitutional in its entirety and invalid because it was enacted in violation of the three-reading rule requirement of the Illinois Constitution. Before I get started with the arguments, I need to address some salient facts that will give context to each of these arguments. Judge Keevlan had a history of public service. She began her career as a teacher in 1997 and became a participant in the state university retirement system, that's SURS. And that's a public pension system under the Illinois Pension Code. SURS has adopted what's called the Reciprocal Act. Judge Keevlan became a participant in the pension system 15 years prior to Public Act 96-889 being enacted. And at that time, the time that she entered the system, there were no tiers. In 2008, Judge Keevlan continued her public service as an elected member of the St. Clair County Board and then she became a member of a different pension system, the Illinois Municipal Retirement System, that's IMRF. That, too, was a system that adopted the Reciprocal Act. She then was appointed judge in 2013. Judge Tolar has a similar public history of public service. She began her career in 2005 as a Cook County State's Attorney. And in doing so, she became a participant of the County Employees and Officers Annuity and Benefit Fund of Cook County. We'll call it the Cook County Pension Fund. That, too, adopted the Reciprocal Act. So Judge Tolar also became a participant in the system years prior to Public Act 96-889 being enacted. And again, there were no tiers at the time that she became a public participant in the pension system. In 2022, Judge Tolar left the Cook County State's Attorney's Office and transitioned to the Judicial Requiring Board. There, she became a participating member of the State Employees Retirement System, that serves. That, too, is a Reciprocal Act-covered system. In March of 2023, she was appointed as a judge and serves as a judge now. So our first argument is whether or not JRS's decision to— whether the decision to violate their respective rights under the Pension Protection Clause. A public employee's right to benefits is constitutionally protected when that employee first begins her job. When Judge Keeblin and Judge Tolar first began their jobs in public service, the Pension Code gave them the right to move to other covered pension systems, including JRS, while maintaining consistent benefits. However, Public Act 96-889, which went into effect after they began their jobs, eliminates that right. And for people who later became judges, as applied to plaintiffs, it's our position that the act is therefore unconstitutional. Article 13, Section 5 of the Illinois Constitution, the Pension Protection Clause, states, membership in any pension or retirement system of the state, any local— I mean, any unit of local government or school district, or any agency or instrumentality thereof, shall be in a forcible contractual relationship, the benefits of which shall not be diminished or impaired. And since at least 1963, the Illinois Pension Code has had what's called the Reciprocal Act. That's 40 ILCS 5-20-101, which, for employees transferring from one governmental unit to another, provides a plan to, quote, assure full and continuous pension credit for all creditable services. The Pension Protection Clause, as interpreted by the Illinois Supreme Court, guarantees that all pension benefits will be determined under a contractual theory. And the court in Heaton, the Supreme Court, said the clause means precisely what it says. If something qualifies as a benefit of the enforceable contractual relationship, resulting from membership in a retirement system, it cannot be diminished or impaired. Their rights were diminished or impaired here. We have to first look at what was the contractual relationship. The Supreme Court has stated that the relationship preserved by the Pension Protection Clause is determined by looking at the features of the pension code at the time the employee, quote, first embarks upon employment in a position covered by a public retirement system, not when the employee ultimately retires. And that's key because JRS attempts to use the Statute 5-121 to say, well, you look at the formulas in place at the time that they leave the system, and that's just not true. And I'll explain that a little bit further, but the key here is that under Heaton and the other Supreme Court jurisprudence, that means that the contract became enforceable when Judge Keevlin began her public service in 1997 and when Judge Tolar began her public service in 2005. Once a person commences to work and becomes a member of a public retirement system, any subsequent changes to the pension code that would diminish the benefits conferred by membership cannot be applied to that person. That's Carmichael v. Laborers and Retirement Board Employee Dignity Benefit Fund. And the scope of these protected benefits is broad. The Supreme Court stated in Williams County Board that it protects, quote, all of the benefits that flow from the contractual relationship arising from membership in the public retirement system. In defining what is protected, the Supreme Court has emphasized that the drafters chose expansive language. Those are the words that the Supreme Court used in Kenurva. And I'd like to concentrate on Kenurva for a moment because paragraph 41 of Kenurva is really the key paragraph for this case. In Kenurva, that case dealt with employer retirement benefits, but the benefits were annuities that were not found in the pension code. In fact, the benefits were found in a different statute. The case, as the Supreme Court outlined it, dealt with the Section 10, changes to Section 10 of the Group Insurance Act, rather than the pension code. And the Attorney General's Office in that case took the position that it's not a pension annuity because it's not in the pension code. And the Supreme Court said, no, no, no, that's too narrow of a view of what the pension protection clause covers. And in paragraph 41, they looked at the history of the Constitutional Convention, and they said when the drafters drafted that, they used expansive language. And they stated, if the drafters had intended to protect only core pension annuity benefits and to exclude the various other benefits state employees were and are entitled to receive as a result of membership in a pension system, the drafters could have so specified. But they did not. The text of the provision of the statute does not limit its terms to annuities. If I could ask just a quick question on it. Canerva involved people who did not transfer between systems? Correct, Your Honor. Canerva, it's a simple question. Sure. You're free to expound on it, but I don't want to use up your time. No, that's fine. What's key is this next line where it says it does not limit its terms to annuities or to benefits conferred directly by the pension code. And that's the key phrase, Your Honor, because we believe these are direct benefits. But even if they were indirect benefits, they're still protected. And we would also direct the court's attention to CAF versus Board of Trustees. That's a second district case in 1985. And in that case, there was a question of whether or not some limitations on the Workers' Compensation Act, on what you can collect, applied to the police officer. And in CAF, the court said, looking at it through this sort of contractual perspective, it said that the reduction provision in the Workers' Compensation Act should be considered since the law which exists at the time of the formulation of the contract is deemed to be part of the contract, as though it was expressly referred to and incorporated in. So when you look at what is the contract, it's very broad. The Supreme Court has said that time and time again. If I may, in TAFT, I'm trying to get this in my mind, TAFT is the individual who started out in a municipal police system by operation of law, transferred in the same job to IMRF, if my recollection is correct. Correct. Thank you. And TAFT was a little different simply because he started in the 60s. The pension protection clause became active in 71, and they said that's what his rights vested. And then they subsequently tried to put limitations in the pension code. And the court at that said, you can't do that. These are protected benefits. So the question here is, what are the protected benefits? And that's when you look to the Reciprocal Act. And the Reciprocal Act gives the – it allows participants in the covered pension system the right to combine service credit earned from two or more separate government employers to calculate a single pension annuity that may be greater than if they just receive retirement benefits from each of the respective systems. The right or benefit that the Reciprocal Act affords is the ability to move immediately or in the future to other systems and access the benefits of those other systems. As we described it in our briefing, this is almost like a skeleton key to be able to use to get access to benefits in the various systems. Now, JRS has said, well, you can't point to a specific provision. And we'd say, well, no, there is a plan. The pension – or the Reciprocal Act states there's a plan devised so that you can have continuity of these pension credits. They also say, well, pension credits and benefits are not the same, but you have to envision or you have to conceptualize pension credits as the vehicle to get to benefits. Meaning, if you earn pension credits in one system and then you go to a second system and earn pension credits in that system, when you retire, they look at those and they put those together for a proportional annuity. So, for instance, if Judge Keevlin started in 1996, there were no limitations on her ability to move within systems, just like in Carmichael. Now, Carmichael is somewhat distinguishable because they're within the same system. But the legal principle is the same. In Carmichael, the issue was whether or not a participant can exercise its right to work for a union and use that time that it worked for the union as part of its credible time. And then the second issue is whether or not they could use their pay in the union as part of the calculation. And the issue there was they said, well, these are future. They haven't invested. You haven't used them. And the Supreme Court said, no, no, that you can't look at the pension clause in that way. You have to look at it as, is it something that's available? And our argument here is that, of course, this is available. At the time that Judge Keevlin started in 1997 and the time that Judge Tolar started in 2005, they had the immediate ability, because they were in a covered system, to move to a different system and access the benefits of those systems. And that is, that's the right. That's the right that's in play here. We believe it's a direct benefit. Canara says it's even, you can even do indirect benefits. And I think the best, I mean, that was what we say the deal in place because that was a contractual obligation. And the question then is, well, how do we know that it was, in fact, a benefit? And we say that the clearest indicator that this right existed is that it was taken away. There's no question. It is undisputed that had the Public Act not been enacted, both of these judges would be Tier 1. So it was certainly a benefit, a right that they had, and it was taken away by this act. I see that my time is up, and there are three other issues. Perhaps I can address those in my rebuttal. Judge, do you have any questions? I have maybe a couple more. It looks to me like Judge Tolar had somewhere around 17 years in the system, in two systems prior to the migration to JIB in 22. At retirement, is Judge Tolar still entitled to the benefits that Judge Tolar earned from 2005 to March of 2022? In other words, under those two pension systems before the judicial retirement system? The value of that is diminished. We addressed that in our opening brief, because she has to work now, instead, before she would have been 60. Now she has to work seven years just to gain what she was already entitled to. In fact, the pension credits that she earned in those systems prior to JRS are worth less. The value of them is worth less. She has to work longer to get paid less. So there is, in fact, a diminishment. And the same theory would apply to Judge Kiel? Yes. In fact, John, in our opening brief, there is a letter that was issued by JRS, and it compares the pension. Yes. And that letter shows that almost by a third in her previous credits. So it's not only what should be paid by JRS, it's the credits that she already earned. So those credits were devalued. And, again, it's a diminishment, which is she was certainly entitled to those pension credits. Okay. Thank you. Thank you. Thank you. Ms. Winter.  I plead the court for one, on behalf of the judicial retirement system, which I'll call JRS. The challenges that the plaintiffs raise here are without merit, and we've talked primarily this morning about the pension protection clause challenge. Here the plaintiffs first served as judges well after the Tier 2 reforms that became effective in 2011. And so by the clear statutory language of the relevant provisions, they're entitled to the Tier 2 JRS benefits. And they've raised various challenges to avoid that straightforward result, but the challenges lack merit. In particular, the pension protection clause challenge lacks merit because they are receiving the benefits that they were promised when they first entered public service, and so their benefits have not been unconstitutionally diminished. I suppose it depends on how you frame it, though. I mean, for example, if someone was a county prosecutor on December 31st, 2010, they have right of reciprocity. You'd agree with that, right? But at that time, that right of reciprocity made their tier status portable. They would be Tier 1 somewhere else. The next day, that was taken away. So is that, I guess to me the question is whether that portability of tier status under the reciprocal statute was part of the deal. I think this ties into what was the deal and what does the Reciprocal Act promise and what does the Reciprocal Act not promise. And if I could just kick it up one notch from there and then talk about what was promised and not promised, I think it's important to recognize that the pension protection clause itself doesn't create any rights. It only protects rights that come from some other source, typically a statute. So they have to have some entitlement. It could come from a contract, but typically from a statute. Here would be a statute. And so we have to look at, they're trying to locate this right in the Reciprocal Act. So we have to consider what does the Reciprocal Act provide and not provide. The Reciprocal Act, and that's an option. Someone can retire individually from each system, but if they have credit in more than one system, they can elect to use the Reciprocal Act, which provides a plan for preserving pension credit, which is their service time, their earnings, or their contributions that can be used between systems in accord with the specific ways that are in the statute. A quick example is if someone worked in two funds and each of those funds, you had to work 10 years to be eligible, but they only worked five in each, they could use that time, five plus five, and then become eligible. But when it comes to determining pension benefits, the Reciprocal Act leaves that up to each of the systems under its own benefit rules. Each system is going to use its own formula, and the Reciprocal Act doesn't dictate any particular formula. Was there any system that didn't ensure portability of tier status prior to January 1st, 2011? What the Reciprocal Act does is allow you service time... It's really a yes or no. Is there any pension system that did not allow reciprocity? Any pension system that did that. Is there any one of the pension systems? The police systems do not. They didn't allow... They don't adopt the Reciprocal Act. Okay. Any others that... Those pension systems that follow the Reciprocal Act, are there any one of them that did not allow portability of tier status? Well, they don't allow portability of tier status. They allow pension credits to be used between systems in a certain way. There's no provision in the Reciprocal Act that would allow a person to lock in the benefit structure of another different system that predates their membership in that system. And because plaintiffs can't identify statutory entitlement to this prior JRS structure, their claim can't prevail. The lack of a statutory entitlement here is a missing piece. And they try to get around that in various ways and say, well, we can move between systems and maintain these benefits. But the problem is that the Reciprocal Act doesn't do that. It provides certain features for taking into account service time, earnings, and contributions. And the plaintiffs have received that here. And then the plaintiffs say, well, there's not only the Reciprocal Act. We can look at the pension code as a whole. And the other sections of the pension code don't help the plaintiff's position because there are no other sections of the pension code where a person becomes entitled to the benefits of a particular system before they become a member of that system. To the contrary, if you look at Article 18, the judicial article, that is a trust separate and independent from all other entities, so is each of the other pension systems. And the articles provide that a person only becomes a participant in JRS when they become a judge and not before that. And that's the same for the other systems. So looking at the pension code as a whole doesn't help the plaintiff's position. Plaintiffs mentioned the Taft case and this idea that you look at the law that was in place at the time a contract is formulated. And that is what JRS... In which contract are we talking about? The pension contract. And the pension contract is what were you promised? So we're back to when you look at... So let me ask this question. Are we talking about two contracts, one for each plaintiff, or six contracts, three for each plaintiff each time they joined a new pension system? I think the way to look at that is what were they promised when they entered public service? And you could just take that as the starting point, and counsel suggests that JRS is looking at some later points. But we can look at what were they promised when they started their public service. What they were not promised under the Reciprocal Act or any other part of the pension code was the ability to lock in a benefit formula in another different system before they became a member of that system. They've mentioned the Taft case, and this idea that you would look at the law that existed at the time, and that becomes part of the contract, the time they started public service. But when we look at the law that existed, we still have to ask what was promised under that law? What did that law entitle them to? So we're back to where we started, that there's no statutory entitlement for the right that they're claiming. They contend that, well, the value of their pension credits has been reduced. That's, to some extent, still conflating credits and benefits, but I think more importantly, it's overlooking a missing piece. It's essentially saying that if they were classified as Tier 1 JRS members, they would receive more favorable benefits than they do as Tier 2 JRS members. So therefore, their claims should prevail, and therefore their benefits have been reduced. But the missing piece is that they need to show that they were entitled to those benefits in the first place, and they don't do that because there's no provision in the Reciprocal Act that would accord them that right, and there's no provision in the other pension statutes that would accord them that right, either. They've raised the issue that, by citing to Kanerva, the idea that a pension benefit can be broad. And that's correct, but you still have to have an entitlement to what you're claiming, and that's what's missing here, something that would give them the right to lock in the benefit structure of another different system before they became a member of that system. They refer to the Carmichael case in the same way to suggest that, or to observe that, a protected benefit can be something that you exercise in the future. But you still have to be able to have that right that you could exercise in the future, and that's the missing piece here. Carmichael involved a situation where the Illinois Supreme Court agreed that a statutory right was protected even if the plaintiffs had not exercised the right before an amendment eliminated it. It was the right to buy service credits for leaves of absence. In that case, the plaintiffs were able to, because the plaintiffs were a member of the affected system, they were able to point to a particular statutory entitlement that they had received that directly applied to them as members of that system, and that's what the plaintiffs can't do here. And the same is true for the other cases that counsel relies on, Kinnerva and Taft, those were all situations where the plaintiffs had acquired certain statutory rights that applied to them in the funds they were in, so they could show a statutory entitlement in a way that the plaintiffs cannot do here. And plaintiffs refer to, this is the deal, this is what they were promised, but again, you have to just go up one level and say, let's look at what they were promised. What they were promised comes from statutes. Let's review these statutes, and there is no statute that accords them the right that they're claiming. I'm sorry, are you familiar with the difference between Tier 1 and Tier 1A? Tier 1A was a change that occurred, I believe that was in 2009, that made a change to the JRS system. I believe before that, the computation went to, looked at the last day of a judge's service, in effect the last day of a judge's service, as a component for computing final average salary, and then that change was to a longer period, I believe it then became an average of maybe over four years. Do you have any knowledge as to how that migration from Tier 1 to Tier 1A was handled, or maybe it was 1A to 1, was handled after the change took effect relative to people who were sort of grandfathered into other systems? Well, JRS would be applying the Tier 1 changes to people who became judges in JRS after the effect of... If they were in Tier 1 in, let's say, SRS, did they stay Tier 1 in JRS, or did they become Tier 1A? Well, if they were Tier 1 in other systems, they retained that status. The change to Tier 1A is something that would occur in JRS. I think what he's asking is if someone starts in Tier 1 and ends up going into JRS after, let's say, January 1st, 2011, whether they have the right to be classified as Tier 1 as opposed to Tier 1A when they migrate into the system. I think that's what the question is, wasn't it? It was. Okay. I just assumed that she wasn't sure. I'm not sure we got the answer. I didn't feel like we did, but I... I'm sorry, I'm not sure I fully understand the question. Okay. Let's say that I had four years of IMRF, Tier 1 reciprocal act in place. I then become a judge after December 31st of 2010, after the end of the amendment. Am I entitled to Tier 1, period? In other words, my pension being determined based on my last... my salary on my last day or on my Tier 1A, where you would average the four years? Well, under the reciprocal act, each system is still going to be applying their own formulas. Okay. So if a person is in Teachers, Teachers is going to use their final average compensation calculations. If the job that you retired from was... your last job was as a judge, then a part of that calculation is going to be your judicial earnings. Sure. Okay. And that would be Tier 1A. And the change to Tier 1A would be a factor that gets taken into account there, but each system is applying their own benefit formulas. Each system is doing that in accordance with what the reciprocal act provides and has always provided. And as I mentioned, there's no provision in the reciprocal act or other statutes that would allow plaintiffs to lock in a benefit formula in a different system before they became members. Gotcha. Thank you. Thank you. Any questions? No. Any other questions? No, thank you. Okay, thank you. Mr. Sheehan, you have five minutes in rebuttal. Thank you, Judge. Your Honor, I'd like to directly answer the question about the contract. There are two contracts at play. The contracts are the agreements that were made when you first entered the system, and that is found in Heaton, the Supreme Court case Heaton. It says when you first embark upon employment in a position covered by a pension retirement system, not when the person ultimately retires or moves from the system. We heard JIRS say that there is no entitlement, and that's just wrong. We cited Taft. We said that you could look outside the pension code. We cited Kenurva that said you could look outside the pension code. The rights are found in the pension code, and they're actually found within each of the systems. Those formulas are there for everyone to see. That is part of the contract. Part of the contract when you start, if you're in a reciprocal system, is the ability to access those benefits and rights in each of those systems. So you look to what the law was at the time that you became a member of the first reciprocal system. There are four systems that are not, that don't adopt the Reciprocal Act, and it's our position that they don't enjoy these benefits. These are benefits that come through the Reciprocal Act, and then the actual terms of it are the terms that are in each of the systems, including JIRS. It is the Reciprocal Act that links all of these connected systems together, and that, she keeps saying that there's a missing piece. Well, there is no missing piece, because they are all linked and they're all tethered together through the Reciprocal Act. Thank you. I also would like to address the issue of when the rights are locked in. Again, we cite it to TAP and we cite it to CONERVA, because it's critical to understand that the way in which you can read the Reciprocal Act in harmony with the Pension Protection Clause is to say that the contract and the rights are locked in the day you begin service, and then when you retire, the systems then look at what those rights were at that time and apply the formulas that were in play at that time. If that's consistent, it gives fidelity to the Pension Protection Clause, because otherwise, the way JIRS wants to read 121 is, you wait until you're about to retire, and then you lock in the benefits that are available then. Well, that would violate the Pension Protection Clause. Here's an example. If Judge Tolar decides to retire next week and the legislature now says, your final average salary is $1 and you have to actually work 60 years, well, that's the formula that's in play when she retires. Of course that would be a violation of the Pension Protection Clause. That's not the case? No, it's not at all, Your Honor. Absolutely, but what I'm saying is that's JIRS's position, that you have to wait until they retire to determine what it is, and we say, no, you lock in the benefits. Now, of course, those benefits can increase. They just cannot decrease. I understood their argument to be that the benefits in JIRS would be the day they began with JIRS. Yes. That's what I kind of perceive as a new contract. Would you agree that a contract, which is what the legislature has declared the relationship between employee, state of Illinois, when it comes to pension, that specific pension benefits, with every contract you have to have an offer? Correct?  Acceptance?  And the thing in between requires a reading of the minds, correct? Yes, and consideration. And consideration. I'm going to work to this new job in another governmental unit, and they have to have a meeting of minds on all material terms. I would agree with that. Yes. Okay. And the contract in place. So this is why our reading of this harmonizes the Reciprocal Act, the Pension Protection Clause, and each of the system's formulas, because when you start, you lock in, those are the terms, right? You have, there's consideration because you're paying in. Now, remember, each of these participants pay. They pay out of their paycheck every month. So that's a new, that's what happened in Taft, in fact, Your Honor. They said that he continued to pay, and there was continued consideration. So, yes, so I agree that there is one contract. You look at when someone starts in a reciprocal system, they will look to all of the benefits that are available to them in the other systems. So if in the future, like in Carmichael, they move to a different system, they can avail themselves of those benefits. So that's the contract. All of that is outlined. All of that is the law at the time. It consisted with Taft and Canerva. We ask that you find that that is, in fact. And you're alleging that it's a reciprocal? It's a reciprocal. The Reciprocal Act links them all together, but the actual terms of the contract are, in fact, the benefit structures in each of these. You have a right to access those benefits. So by reciprocity, you encompass or take all of the rights in each of the systems at the day of your first appointment, no matter what system? Correct. Got it. Any other questions? Any further questions? No, thank you. All right, thank you. Thank you. All right, counsel, thank you both. And we have the court to be in recess, and we will issue a decision in due course.